## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

LINDA CONSTRUCTION INC., LINDA MCGEE, and
JESSE MCGEE,

                                Plaintiffs,             Case No. 1:15-cv-8714

      v.

CITY OF CHICAGO, DEPARTMENT OF
PROCUREMENT SERVICES, a municipal corporation;
REPUBLIC SERVICES Inc., an Arizona corporation;
ALLIED WASTE TRANSPORTATION Inc., an Illinois
corporation; SENG LLC is an Illinois limited liability
company; TEAMSTERS, LOCAL UNION 731 is an
Illinois Union Association; CONNOR & GALLAGHER
INSURANCE SERVICES Inc., an Illinois
corporation; NATIONAL CASUALTY COMPANY, an
Arizona corporation; JAMIE L. RHEE, Chief
Procurement Officer, City of Chicago, individually;
MARK RILEY, agent for Republic Services Inc.,
Individually; BRIAN HOLCOMB, agent for Allied Waste
Transportation Inc., Individually; TERRY HANDCOCK
and THOMAS BROWN, Union Representatives, in their
individual capacity; JOHN DOE, agent for Seng LLC in
his individual capacity,

                                Defendants.

## COMPLAINT FOR DAMAGES
## AND INJUNCTION

The Plaintiffs, by and through their attorney Maurice James Salem of the Law Of-

fices of Salem & Associates P.C., seek compensatory and punitive damages, as well as

injunctive relief against Defendants for racial discrimination pursuant to 42 USC §§1981,

1983 & 1985(3), and 42 U.S.C. § 2000e *et seq*.

## NATURE OF THE ACTION

1.  This action deals with the City of Chicago's continued refusal to award any minority owned businesses City contracts to haul garbage.  The Plaintiff Linda Construction Inc. ("LCI") is owned and operated by an African American family.  It is in the business of transporting city refuse and household garbage from transfer stations to landfills. LCI is the only blacked owned company in the state of Illinois that can provide the service the City requires to transport garbage to various landfills.

2.  During Mayor Daley's administration, it was undisputed and it had been a well established practice by the City of Chicago not to award any City contracts to minority and woman-owned companies.  After this fact was publicly disclosed, the City was pressured to award contracts to minority owned companies.  However, white owned firms, such as Allied Waste Transportation Inc. ("Allied") were not, and are still not, happy with this new arrangement because it takes business away from it.  So in order to comply with the City's purported "MBE-WBE" (minority- and women-owned business) new policy white owned companies, such as Allied, created token minority and women owned contractors who acted as "pass-through" to white contractors.  In effect the white owned companies continued to benefit from the City's contracts.  This fraud continued for over twenty (20) years during the Mayor Richard M. Daley era. The City government looked the other way when the fraud was openly perpetrated by Allied.

3.  After public disclosure of Allied committing this fraud, Republic Services Inc. ("Republic"), an Arizona company, purchased Allied so that Allied could still be awarded City contracts.  Although Republic became the parent company of Allied, Allied contin-

ued to function with the same set of characters that committed the fraud against the public. Allied still has not changed its feelings against awarding minority contracts. In fact, Republic and Allied simply developed a new method to ensure the minority owned contractors do not get awarded any of the City's contracts.

4. After the fraud by Allied and after Republic purchased Allied, the City appeared to be making efforts towards awarding minority and women owned business city contracts, but that was never its true goal. On March 19, 2010, the City awarded Allied, now a subsidiary of Republic, a contract to haul garbage, but Allied was required to enter into a "joint venture" with a minority owned contractor. See the contract attached hereto as **Exhibit A**. The minority owned contractor in this case was the Plaintiff LCI. Pursuant to the contract LCI was to be given a three year probationary period and if it shows that it can do the work, then it will be eligible to bid for the contract as a prime contractor.

5. The City and Allied were not happy with LCI having an opportunity to bid for any City contracts, just because it was minority owned. Given that Allied's prior method of having a token minority owned contractor failed, they developed a new method of stopping minority contracts. This new method involved doing whatever was possible to cause the minority contractor to fail during its three-year probationary period, so that it would not become eligible to bid for any contracts. This would allow the City and Allied to say, we tried to have a minority contractor do the work, but it failed to qualify or it was not capable of doing the work.

6. In this case, Republic and Allied and those who were recruited to help them, such as Seng LLC and Local Union 731, with City officials' participation, treated the mi-

3

nority contractor LCI differently than they treated white owned contractors and in fact, they sought to ensure that LCI failed during their probationary period by obstructing LCI's operations. The Defendant City, Republic and Allied's actions were also in breach of and in violations of the rules set out in the City's contract with Allied. **Exhibit A** hereto.

7.   LCI is the only black owned contractor in the state of Illinois that can perform the City's required work. On March19, 2010, LCI started its three-year probationary period to transport city garbage from transfer stations to landfills. During the probationary period, Republic and Allied operated the transfer station, loaded the garbage on LCI's trucks and were expected to assist and "mentor" LCI pursuant to the City contract. The probationary period was for LCI to prove that it was capable of complying with the City's work requirements. After three years, if LCI shows that it can do the work, then it will be able to bid for City Contracts as a prime contractor, with no interference from Republic or Allied.

8.   During the probationary period, the City contract required the Defendant companies Republic and Allied to "mentor" LCI. They were also supposed to teach and assist LCI in performing the work. However, this was like having the fox guard the henhouse because nothing could have possibly occurred to make these Defendants change their minds and be happy with a minority contractor coming in and taking away what they believe to be their contracts.

9.   It is of course not surprising that Republic and Allied were not happy about having black-owned contractor coming in and taking their contract. It was the City, and

4

in particular the Department of Procurement Services ("DPS") and Defendant Jamie

Rhee ("Rhee"), who allowed and participated with the intentional attacks against Plain-

tiffs to cause their business to fail before the end of the probationary period. However,

despite all of their efforts that interfered with and obstructed LCI's operations, LCI still

managed to succeed in the three-year probationary period and showed that it could per-

form the required work, but yet LCI was kept in the probationary status past the three-

year period and did not received an opportunity to bid for the City contracts as the prime

contractor after the three year period.

10. The Defendants' intention was to make it look like Plaintiffs could not per-

form the required work or that Plaintiffs' company failed or became insolvent. This

would result in Plaintiffs failing the probationary period. Defendants wanted to make it

look like the minority owned contractor in this case could not be awarded a city contract

because of its failure to do the work, and not due to the fact that it was minority owned.

11. Now, the City and the other Defendants' efforts have succeeded in causing

Plaintiffs' business operation to fail. By March 15, 2015, Defendants caused Plaintiffs to

lose over $14 million dollars. The Defendants breached many of the standard practices

per the City contract, **Exhibit A**, and recruited Defendant Seng LLC to wrongfully seize

some of Plaintiffs' trucks and caused the Local Union 731 to encourage and assist some

LCI's employees to obstruct LCI's operations. (However, most of the LCI's employees

were outstanding and sincere individuals who truly wanted Plaintiffs to succeed.)

12. The Connor & Gallagher Insurance Services Inc. obtained insurance coverage

for LCI's trucks where they were prohibited from operating in Missouri, which was not

done for white owned contractors and which would have further restricted LCI's operations because it would be unable to haul garbage to landfills in Missouri. This was not the case for white owned contractors. In addition, Connor & Gallagher increased LCI's insurance premium from $155,000 to $480,000, despite the fact that there were no losses, no claims and no change in the number of trucks.

13. The insurance was eventually purchased from the National Casualty Company, another Arizona corporation, which refused to return $101,000.00 to LCI after terminating the policy on April 8, 2015.

14. The Statement of Facts below specifically describes the acts by Defendants that treated Plaintiffs differently from white owned contractors and this treatment was in breach of and in violation of the standards of practice set forth in the City contract. **Exhibit A**. Unfortunately, since the issue of minority contracts has been identified as a serious problem, more than 30 years ago, the City of Chicago still has not awarded one minority contractor to haul the City's garbage.

## JURISDICTION AND VENUE

15. This Court has federal question jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331, 1343(a)(3), 1343(a)(4), 2202; 42 U.S.C. § 2000e et seq., and 42 U.S.C. §§ 1981, 1983 and 1985(3), and the Fourteenth Amendment of the U.S. Constitution. Venue in Illinois is based on where the discrimination occurred and Defendants' state of incorporation and where they are doing business and where the individual defendants are domicile.

## **THE PARTIES**

16.  Plaintiff, Linda Construction Inc., ("LCI") is all Illinois corporation with its principal place of business in Illinois.  It is a minority owned contractor that hauls garbage to landfills.

17.  Plaintiff Linda McGee is the President of LCI and the majority shareholder; she operates the company with her husband Plaintiff Jesse McGee, who is the Vice President of LCI.

18.  Plaintiff Jesse McGee, is the Vice President of LCI.

19.  Defendant City of Chicago is the municipal corporation.

20.  Defendant Republic Services Inc. ("Republic") is an Arizona corporation with its principal place of business in Arizona, and it is a white owned company.

21.  Defendant Allied Waste Transportation Inc. ("Allied") is an Illinois corporation with its principal place of business in Illinois that is a subsidiary of Republic, and it is a white owned company.

22.  Defendant SENG LLC is an Illinois limited liability company with all of its Members domiciled in Illinois.  It assisted Defendants Republic and Allied in obstructing LCI's operations by wrongfully seizing some of LCI's trucks.

23.  Defendant Teamsters Local Union 731 is an Illinois union association with its principal place of business in Illinois.  It assisted Defendants Republic and Allied in obstructing LCI's operations by encouraging employee disruption and prohibiting LCI from conducting any disciplinary measures against any employee.

24. Defendant CONNOR & GALLAGHER INSURANCE SERVICES Inc., an Illinois corporation. It assisted Defendants Republic and Allied in obstructing LCI's operations by restricting LCI's trucks from operating in Missouri and increased its premium from $155,000 to $480,000.

25. Defendant NATIONAL CASUALTY COMPANY, is an Arizona corporation that assisted Defendants Republic and Allied in obstructing LCI's operations by restricting LCI's trucks from operating in Missouri and by refusing to return $101,000.00 to Plaintiffs.

26. Defendant JAMIE L. RHEE, Chief Procurement Officer, City of Chicago, who assisted Defendants Republic and Allied in obstructing LCI's operations by continuing to pay Allied in violation of City policy not to pay unless Plaintiffs sign a "C2 Form." This permitted Allied to get paid while continuing to obstruct Plaintiffs' operation.

27. Defendant MARK RILEY, agent for Republic Services Inc. who made the decisions for the company.

28. Defendant BRIAN HOLCOMB, agent for Allied Waste Transportation Inc. who made the decisions for the company.

29. Defendants TERRY HANDCOCK and THOMAS BROWN, Union Representatives, who made the decisions for the Union not to discipline any of LCI's employees.

**STATEMENT OF FACTS**

30. On March 19, 2010, Plaintiff Linda Construction Inc. ("LCI") entered into an agreement with Allied Waste Transportation Inc. ("Allied"), in a "joint-venture," for a

three year probationary period to haul refuse and household garbage to landfills, pursuant to a City contract that was awarded to Allied. The three-year probationary period expired on February 14, 2013. During the three-year probationary period LCI had to prove that it could do the required work and comply with the City's requirements for hauling garbage, in order to qualify to bid for City contracts as a prime contractor.

31. Republic Services Inc., ("Republic"), the parent company of Allied, and Allied are white owned companies that LCI, a minority owned company, would take contracts away from. Republic and Allied did not want to see LCI take what they believe to be their contracts just because it was a minority owned company. Needless to say, they wanted to see LCI fail its probationary period so that LCI could not get an opportunity to bid for City contracts as a prime contractor.

32. The Defendants' intention was to make it look like Plaintiffs could not perform the required work or that Plaintiffs' company failed or became insolvent. This would result in Plaintiffs' failing the probationary period. Defendants wanted to make it look like the minority owned contractor in this case could not be awarded a city contract because it did not qualify or it failed to do the work, and not due to the fact it was minority owned.

33. Republic and Allied did everything they could to obstruct LCI from successfully completing the probationary period. They even recruited their friends and long term associates in their line of work to help, such as Seng LLC and Teamster Local Union 731, and Connor & Gallagher Insurance Services Inc., to assist them in obstructing LCI's operation.

34. In fact, City officials such as Defendant Jamie Rhee participated in the disparate treatment of LCI. LCI was treated differently by all of the Defendants as compared to white owned companies. All of the Defendants sought to ensure that LCI failed during its probationary period by obstructing its operation and rendering insolvent. Defendants City of Chicago, Republic and Allied's actions were also in breach of, and in violations of the standards set out in the City's contract with Allied. **Exhibit A** hereto.

35. From the start of the probationary period, March 19, 2010, on April 1, 2010, Republic refused to load LCI trucks and terminated its agreement with LCI because it claimed that the LCI employees were not members of the Local Union 731. However, Republic had instructed the Union not to allow LCI employees to sign membership applications. After resolving this problem in August, 2010, Republic and Allied reinstated the joint venture agreement with LCI and, together with the Union, continued to obstruct LCI's operation.

36. The Union prohibited LCI from bringing any disciplinary actions against any of its employees for any reason by consistently siding with the employees no matter how obvious and blatant the employee's violations were. LCI could not discipline employees for being late, for not reporting to work for days, for bring firearms to work because the Union sided with the employees each and every time. The Union sided with the employees who refused to take drug screening, even though it was required for such dangerous operations. In fact, LCI filed a grievance with the Union that it ruled in favor of the employees all of the time, no matter how egregious the employee's conduct was. Nothing was done about it.

37.  Union members and leaders, who had a long term relationship with Republic and Allied, encourage LCI employees to do whatever they wanted to obstruct operations because they were assured not to be disciplined.  Some, but not most, of the employees took advantage of LCI inability to discipline them and obstructed LCI operations.

38.  The Union informed LCI truck drivers that load counts does not matter as long as they pull one load and make an effort for a second load each day.  However, this was in clear violation of the contract, which states that 2.5 loads per day are required.  This would result in Plaintiffs failing the probationary period.

39.  The Union filed bogus lawsuits against LCI for unpaid dues for seasonal employees.  However, pursuant to the contract, dues are not paid to seasonal employees and the Union was clearly aware of this fact.

40.  LCI retained three attorneys to defend it against these lawsuit.  However, each of these attorneys complained to LCI that the Union threatened them.

41.  Defendant Jamie Rhee ("Rhee") of the Department of Procurement Services (DPS) was the enabler that permitted Republic and Allied to obstruct LCI in violation of the City's policies and contract, **Exhibit A**.  Defendant Rhee encouraged all of the attacks by Republic and Allied against LCI, and ignored all of the complaints from the Plaintiffs.  Defendant Rhee continued to pay Republic and Allied without obtaining signed approvals (called "C2 Form") from LCI, between 2011 and 2014.  This was in clear violation of the City's written policy.  See **Exhibit B** hereto, which requires LCI to sign a "C2 Form" before Rhee can issue payments.  Although LCI did sign some C2 Forms, many were not signed, but Rhee made payments regardless of LCI's signature, in violation of **Exhibit B**.

42.  During the first year of operation, LCI repeatedly complained to Rhee that Republic and Allied were not loading their trucks in a timely manner.  Pursuant to the contract, LCI was required to do 2.5 loads per day.  However, Republic and Allied were doing the loading and they were intentionally delaying the loading process to ensure LCI failed its probationary period.  After a year of complaining to Defendant Rhee it became obvious that she was also there to see LCI fail.

43.  Brian Holcomb, of Allied, had promised to pay LCI $800,000.00 towards invoice number 1155, which was for 1.6 million.  However, no funds were received; later he said Allied could not pay $800,000.00, but could pay $400,000.00 towards the invoice, but he wanted to know how it was going to be spent.  However, still to this date no payments were made.  This was in an effort by Allied to obstruct LCI operation and render it insolvent, so as to fail the probationary period.

44.  On January 19, 2012, the City's Office of Inspector General sent DPS a report on how Republic and Allied mistreated minority owned business by not paying them and driving them out of business using various scams, see **Exhibit B**.  During that time, for 16 months, LCI made over 24 complaints with DPS, specifically to Jamie Rhee, against Republic and Allied, but absolutely nothing was done to address LCI's complaints.

45.  On March 29, 2012, Allied attempted to terminate LCI probationary period by claiming lack of performance, but it failed to prove it.

46.  Allied breached the Exclusivity Clause by allowing TC Transportation, a white owned company, to utilize sites that were contractually exclusive to LCI.  Defendant Rhee, Republic and DPS were aware of this breach and they encouraged it.

12

47.  In January 2013, LCI made complaints to Republic, Allied manager, Brian Holcomb, Mark Riley and DPS about time alternations and other issues causing low work performance and productivity problems, such as starting loading late in the mornings and shutting down operations early in the day.   Pursuant to the contract, loading was supposed to start at 6:00am and end at 5:00pm, which is 10.5 hours of loading per day. However, Republic typically starts the loading after 7:00am, between 7:15 and 7:45am, and end the load at 2:00pm.  This permitted only a four hour work day.  In addition, the loading of one truck should be done within 6 to 8 minutes, but Republic typically takes 10 to 15 minutes to load one truck.  This was done to show LCI could not perform the required work and the City knew this was happening, not only from Plaintiffs' complaints, but also from the actual recorded time that the trucks enter and exist the transfer stations.  The City never did anything to resolve this problem.

48.  In December 2013, an invoice was submitted to Republic for the amount of $1,413,790.86 for services rendered by LCI.  This was not paid because Republic claims that LCI was not able to meet its 2.5 loads per day, but it was Republic that controlled the loading and it intentionally delayed the loading process.

49.  Pursuant to the contract, **Exhibit A**, Republic and Allied have 15 days to deny an invoice, but they did not deny it and they did not pay it.  This is in an effort to obstruct LCI's operation and render LCI insolvent because if LCI becomes insolvent, then it will not have successfully completed its probationary period.  And to this date, they still have not denied the invoice and still have not paid it.

50. Republic and Allied recruited friends and associates from their line of work, and who they had a long term relationship with, to obstruct LCI's operations and render it insolvent. Defendant Seng LLC is a creditor that wrongfully seize some of Plaintiffs' trucks to obstruct LCI operations. Seng LLC claimed that it was owned money, but this was a false claim because it was paid what was owed. Seng LLC made this claim to Republic and not to LCI. In fact, Republic asked Seng LLC to do this to obstruct LCI's operations.

51. The Connor & Gallagher Insurance Services Inc. obtained insurance coverage for LCI's trucks where they were prohibited from operating in Missouri, which was not done for white owned contractors and which further restricted LCI's operations. The insurance was purchased from Defendant National Casualty Company, which refused to return $101,000.00 to LCI after terminating the policy on April 8, 2015. This not only obstructed LCI's operation, but it was also in an effort to render it insolvent.

52. On March 1, 2014, Allied closed the transfer station for 1 & 1/2 days and allowed garbage to overflow. Allied then sent pictures to DPS stating that LCI violated section 3.1 and 4.1 of the contract because it allowed garbage to overflow. However, Republic reluctantly withdrew its attack once it was publicly disclosed that Allied shutdown the transfer station.

53. On April 7, 2015, Republic'a attorney sent a letter to LCI terminating its joint venture agreement with Allied. However, this was in violation of the contract, **Exhibit A**, because Republic was required to first consult with DPS. Moreover, the basis of the termination were completely false allegations made against LCI. For example, LCI never

subcontracted more than 15% of its work, LCI had a Union contract, the Health and Welfare never threatened to strike in March, 2015, because it kept billing LCI until August, 2015, Seng LLC's $80,000 claim was bogus and Republic caused Seng LLC to make such a bogus claim, and finally, LCI was not insolvent because Republic owned LCI 1.6 million dollars and to this day, it has not paid.

54. Republic demanded that the City not find that LCI successfully completed its probationary period because it was insolvent. However, despite all of the efforts by Republic and Allied to cause LCI to become insolvent, it was not insolvent. Moreover, the contract requires that LCI be able to comply with at least 80% of the required hauling, which it did. LCI successfully completed 90% of the required hauling and thus, successfully completed its probationary period. Even though LCI successfully completed its probationary period, due to Republic and Allied's hold on LCI's money, and having SENG LLC take some of LCI's trucks, LCI was placed in a difficult position to bid for City contracts as a prime contractor. All of the Defendants intentionally placed LCI in its current position so that it could not bid for the upcoming November City contracts.


**DAMAGES**

55. By March 15, 2015, Defendants caused Plaintiffs to lose over $14 million dollars. Defendants placed LCI in such financial circumstances that it would be difficult to bid for the upcoming November City contracts, even though LCI successfully completed the probationary period.

### FIRST CAUSE OF ACTION
### DISCRIMINATION ON THE BASIS OF RACE
### 42 U.S.C § 1981

56.  Plaintiffs repeat paragraphs 1 through 55 as stated herein.

57.  Plaintiff LCI is an Illinois company that hauls refuse and household garbage from transfer stations to landfills.  It is owned and operated by an African American family.

58.  Plaintiff Linda McGee is the President and majority shareholder of LCI and she is an African American woman.  She operates LCI with her husband Plaintiff Jesse McGee, an African American man.

59.  The Defendants in this action treated Plaintiffs differently, than they treated whites and white owned businesses, because of Plaintiffs Linda and Jesse McGee's race.

60.  The City of Chicago has never contracted with a minority owned business to haul garbage and it, along with the other Defendants, treated Plaintiffs differently to ensure that they do not qualify to bid for such City contracts because of their race.

61.  This racial discrimination is in violation of  42 U.S.C § 1981, where compensatory and punitive damages may be awarded.

62.  **WHEREFORE,** Plaintiffs respectfully request the following relief:

a) compensatory damages in the amount of  $24 million dollars;

b) punitive damages in an amount that will deter the Defendants and others similarly situated from repeating such conduct;

c) directing the City of Chicago to permit Plaintiffs to bid for the subject City contract as a prime contractor;

d) together with such other and further relief this Court deems just and proper.

## SECOND CAUSE OF ACTION
## DISCRIMINATION ON THE BASIS OF RACE
## 42 U.S.C § 2000e

63.  Plaintiffs repeat paragraphs 1 through 55 as stated herein.

64.  Plaintiff LCI is an Illinois company that hauls refuse and household garbage from transfer stations to landfills.  It is owned and operated by an African American family.

65.  Plaintiff Linda McGee is the President and majority shareholder of LCI and she is an African American woman.  She operates LCI with her husband Plaintiff Jesse McGee, an African American man.

66.  The Defendants in this action treated Plaintiffs differently, than they treated whites and white owned businesses, because of Plaintiffs Linda and Jesse McGee's race.

67.  The City of Chicago has never contracted with a minority owned business to haul garbage and it, along with the other Defendants, treated Plaintiffs differently to ensure that they do not qualify to bid for such City contracts because of their race.

68.  This racial discrimination is in violation of  42 U.S.C § 2000e, where compensatory and punitive damages may be awarded.

69.  **WHEREFORE,** Plaintiffs respectfully request the following relief:

a) compensatory damages in the amount of $24 million dollars;

b) punitive damages in an amount that will deter the Defendants and others similarly situated from repeating such conduct;

c) directing the City of Chicago to permit Plaintiffs to bid for the subject City contract as a prime contractor;

d) together with such other and further relief this Court deems just and proper.


**THIRD CAUSE OF ACTION**
**FOURTEENTH AMENDMENT VIOLATION**
**42 U.S.C § 1983**

70.  Plaintiffs repeat paragraphs 1 through 55 as stated herein.

71. Defendants, City of Chicago and Jamie L. Rhee, at all time herein, were acting under the color of law.

72.  Plaintiff LCI is an Illinois company that hauls refuse and household garbage from transfer stations to landfills.  It is owned and operated by an African American family.

73.  Plaintiff Linda McGee is the President and majority shareholder of LCI and she is an African American woman.  She operates LCI with her husband Plaintiff Jesse McGee, an African American man.

74.  The Defendants in this action treated Plaintiffs differently, than they treated whites and white owned business, because of Plaintiffs Linda and Jesse McGee's race.

75.  The City of Chicago has never contracted with a minority owned business to haul garbage and it, along with the other Defendants, treated Plaintiffs differently to ensure that they do not qualify to bid for such City contracts because of their race.

76.  This racial discrimination is in violation of  the Fourteenth Amendment to the US Constitution, which requires equal protection under the law.

77.  **WHEREFORE,** Plaintiffs respectfully request the following relief:

a) compensatory damages in the amount of $24 million dollars;

b) punitive damages in an amount that will deter the Defendants and others similarly situated from repeating such conduct;

c) directing the City of Chicago to permit Plaintiffs to bid for the subject City contract as a prime contractor;

d) together with such other and further relief this Court deems just and proper.

### FOURTH CAUSE OF ACTION
### (Conspiracy between private actors and government officials)
### 42 U.S.C § 1985(3)

78.  Plaintiffs repeat paragraphs 1 through 55 as stated herein.

79.  Plaintiff LCI is an Illinois company that hauls refuse and household garbage from transfer stations to landfills.  It is owned and operated by an African American family.

80.  Plaintiff Linda McGee is the President and majority shareholder of LCI and she is an African American woman.  She operates LCI with her husband Plaintiff Jesse McGee, an African American man.

81.  The private non-governmental Defendants in this action, in conspiracy with the state actors herein, treated Plaintiffs differently, than they treated whites and white owned businesses, because of Plaintiffs Linda and Jesse McGee's race.

82.  As a result of this conspiracy, the City of Chicago has never contracted with a minority owned businesses to haul garbage and it, along with the other Defendants, treat-

ed Plaintiffs differently to ensure that they do not qualify to bid for such City contracts because of their race.

83.  This racial discrimination is in violation of  the Fourteenth Amendment to the US Constitution, which requires equal protection under the law.

84.  **WHEREFORE,** Plaintiffs respectfully request the following relief:

a) compensatory damages in the amount of $24 million dollars;

b) punitive damages in an amount that will deter the Defendants and others similarly situated from repeating such conduct;

c) directing the City of Chicago to permit Plaintiffs to bid for the subject City contract as a prime contractor;

d) together with such other and further relief this Court deems just and proper.

<u>**FIFTH CAUSE OF ACTION**</u>
<u>**BREACH OF CONTRACT**</u>

85.  Plaintiffs repeat paragraphs 1 through 55, as though stated herein.

86.  This breach of contract cause of action is against only the City, Republic and Allied.  The contract is <u>**Exhibit A**</u> attached hereto.

87.  On March 19, 2010, Plaintiff LCI entered into an agreement with the Defendants stated herein, pursuant to the City contract with Allied, <u>**Exhibit A**</u>.

88.  The Defendants breached said contract by their actions as set forth in the Statement of Facts above.

89.  As a result of this breach, Plaintiffs were damaged in that they lost their business and $24 million dollars and did not receive an opportunity to bid for the subject contracts in this case.

90.  **WHEREFORE,** Plaintiffs respectfully request the following relief:

a) compensatory damages in the amount of $24 million dollars;

b) directing the City of Chicago to permit Plaintiffs to bid for the subject City contract as a prime contractor;

c) together with such other and further relief that this Court deems just and proper.

## SIXTH CAUSE OF ACTION
## INTERFERENCE WITH CONTRACT

91.  Plaintiffs repeat paragraphs 1 through 55, as though stated herein.

92.  This cause of action is against all Defendants for interfering with the contract, **Exhibits A**.

93.  The Defendants did not want Plaintiffs to complete their probationary period as set forth in the subject contract in this case.

94.  The Defendants interfered with Plaintiffs efforts in attempted to comply with said contract as described above in the Statement of Facts.

95.  As a result of this interference, Plaintiffs were damaged in that they lost their business and $24 million dollars and did not receive an opportunity to bid for the subject contracts in this case.

96.  **WHEREFORE,** Plaintiffs respectfully request the following relief:

a) compensatory damages in the amount of $24 million dollars;

b) directing the City of Chicago to permit Plaintiffs to bid for the subject City

contract as the prime contractor;

c) together with such other and further relief that this Court deems just and proper.

**<u>JURY TRIAL IS DEMANDED</u>**

Dated: October 1, 2015**,**

                                            Respectfully submitted,

                                            /s/Maurice James Salem,
                                            Law Offices of Salem & Associates
                                            Attorney for Plaintiffs
                                            7156 West 127th Street, B-149
                                            Palos Heights, IL. 60463
                                            Tel. (708) 277-4775
                                            Fax (708) 448-4515
                                            salemlaw@comcast.net