# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

LINDA CONSTRUCTION INC.,
LINDA McGEE and JESSE McGEE,

                 Plaintiffs,

         v.

CITY OF CHICAGO, *et al.*,

                 Defendants.

Case No. 15 C 8714

Judge Harry D. Leinenweber

## MEMORANDUM OPINION AND ORDER

Before the Court are three Motions to Dismiss filed by Defendants Seng LLC ("Seng") and John Doe (collectively the "the Seng Defendants"); Defendants City of Chicago ("the City") and Jamie L. Rhee ("CPO Rhee") (collectively "the City Defendants"); and Defendants Republic Services Inc. ("Republic"), Allied Waste Transportation Inc. ("Allied"), Mark Riley, and Brian Holcomb (collectively "the Republic Defendants") [ECF Nos. 28, 32, 33].

In addition, the Court considers Plaintiffs' Motion for Preliminary Injunction, Motion for Evidentiary Hearing, and Motion for Leave to Present New Evidence [ECF Nos. 17, 56, 60], as well as the Seng Defendants' Motion for Sanctions [ECF No. 42].

For the reasons stated herein, the Motions to Dismiss are granted. The Motion for Preliminary Injunction, Motion for Evidentiary Hearing, and Motion for Leave to Present New

Evidence are, in turn, denied as moot. The Motion for Sanctions is also denied.

## I. <u>BACKGROUND</u>

The following facts are contained in Plaintiffs' Complaint and documents attached to, referenced in, and critical to, the Complaint. *Geinosky v. City of Chicago,* 675 F.3d 743, 745 n.1 (7th Cir. 2012). Because Plaintiffs chose not to provide the Court with a statement of the relevant facts in their responsive briefing, the following is the Court's best attempt to cobble together from the disjointed allegations in the Complaint the facts pertaining to the Motions presently before the Court.

On November 9, 2009, the City, through its Department of Procurement Services ("DPS"), advertised for bids on a contract for "Operation and Maintenance of City-Owned Materials Recycling and Recovery Facilities" (the "MRRF contract"). In its solicitation for bids for the MRFF contract the City specified a minimum goal participation of 16.9 percent Minority-Owned Business Enterprises ("MBEs") and 4.5 percent Women-Owned Business Enterprises ("WBEs"). The winning contractor was required to list the utilization percentages of MBEs and WBEs in its bid proposal to the City.

On or about December 11, 2009, Defendant Allied submitted its sealed bid to provide handling, treatment, storage, transportation, hauling, and disposal of Municipal Solid Waste

for a thirty-six month period from March 9, 2010 through February 14, 2013 ("Contract No. 21472"). In the spring of 2010, the City accepted Allied's bid and awarded Contract No. 21472 to Allied. (Compl. Ex. A; City Def.'s Mem. Ex. A, ECF No. 32-1).

Plaintiffs allege that Contract No. 21472 between Allied and the City "required [Allied] to enter into a 'joint venture' with a minority owned contractor"; that Plaintiff Linda Construction Inc. ("LCI") — an African-American owned business — was that contractor; that the contract gave LCI a three-year probationary period to prove it was capable of doing the required work; and that if LCI succeeded during the probationary period it would be eligible to bid for the City contract as prime contractor. After thoroughly examining Contract No. 21472, the Court is unable to find any of these allegations to be true. In ruling on a 12(b)(6) motion, "[w]here an exhibit and the complaint conflict, the exhibit typically controls." *Forrest v. Universal Sav. Bank, F.A.,* 507 F.3d 540, 542 (7th Cir. 2007). Therefore, the Court "is not bound by" LCI's characterization of the exhibit and "may independently examine and form its own opinions about the document." *Id.*

From the terms of Contract No. 21472, it appears that Allied identified LCI as one of several MBE entities that it would serve as a subcontractor if Allied won the bid with the

City. LCI was identified as a certified MBE subcontractor that would provide Hauling Services to Allied, as prime contractor, and be rewarded equivalent to 3 percent of all net payments made to Allied under the contract. Moreover, LCI was required to "enter into a formal written agreement for the above work with [Allied] as Prime Contractor, conditioned upon [Allied's] execution of a written contract with the City of Chicago. . . ." On March 19, 2010, after Allied was awarded Contract No. 21472, LCI indeed entered into a formal written subcontractor agreement with Allied. But that contract is not attached to the Complaint, nor do Plaintiffs purport to base their claims on the terms of that agreement.

Instead, Plaintiffs center their claims on Contract No. 21472, the contract between Allied and the City. They allege that the City and Allied were not happy that LCI was awarded the MBE contract, and therefore set about doing "whatever was possible to cause [LCI] to fail . . . so that [LCI] would not become eligible to bid for any [future] contracts." (Compl. ¶ 5). Plaintiffs allege that Allied and its parent company, Republic, with the help and participation of the City, recruited other named Defendants to treat LCI "differently than they treated white owned contractors" and "to ensure that LCI failed . . . by obstructing LCI's operations", (i*d*. at ¶ 6), and rendering it insolvent. (*Id.* at ¶ 50). In

support of this accusation, Plaintiffs point to the following occurrences:

1. Republic and Allied — who operated the transfer station — refused to load LCI's trucks and intentionally delayed the loading process to ensure LCI was unable to complete the required number of daily loads. (*Id.* at ¶¶ 35, 42).

2. Republic instructed Local Union 731 not to allow LCI employees to sign membership applications, and then Allied attempted to terminate its agreement with LCI because LCI employees were not members of the Union. (*Id.* at ¶ 35).

3. Even after resolving this dispute with the Union, LCI was prohibited from bringing any disciplinary actions against its employees for any reason. Specifically, LCI contends that the Union leaders encouraged LCI employees to misbehave and obstruct LCI's operations, and then consistently sided with LCI's employees despite their obvious misconduct. (*Id.* at ¶¶ 36, 37). LCI filed a grievance with the Union to no avail. (*Id.* at ¶ 36).

4. The Union filed frivolous lawsuits against LCI for unpaid dues, and then reportedly threatened LCI's attorneys retained to defend against the suits. (*Id.* at ¶ 39).

5. CPO Rhee paid Republic and Allied without obtaining signed approvals from LCI, in violation of the City's express policy. (*Id.* at ¶ 41).

6. Brian Holcomb, of Allied, promised to pay LCI $800,000 towards a $1.6 million invoice, but failed to do so. (*Id.* at ¶ 43). Later, Holcomb told LCI that Allied could only pay $400,000 towards the invoice. (*Id.*). But to date, no funds have been paid. (*Id.*).

7. LCI brought the aforementioned concerns to the attention of CPO Rhee (in fact, they made at least 24 complaints in 16 months), but she did nothing to remedy the situation. (*Id.* at ¶¶ 42, 44, 47).

8. On March 29, 2012, Allied attempted unsuccessfully to terminate LCI by claiming lack of performance. (*Id.* at ¶ 45).

9. Allied allowed TC Transportation, a white-owned company, to utilize sites that were contractually exclusive to LCI. (*Id.* at ¶ 46).

10. In December 2013, Republic refused to pay LCI on a $1.4 million invoice because it claimed LCI had failed to meet its daily load requirement (it is unclear from the pleadings whether this invoice is different than the $1.6 million invoice discussed previously). (*Id.* at ¶ 48).

11. Seng, a creditor of LCI, claimed it was owed money and seized LCI's trucks. LCI contends that it had already paid Seng and therefore Seng's claim against it was false and the seizure of the trucks was improper. (*Id.* at ¶ 50).

12. In March 2014, Allied accused LCI of violating the terms of its agreement by allowing garbage to build up at the transfer station, but withdrew the allegation once it was disclosed that the garbage build-up was due to Allied shutting down the transfer station for a day and a half. (*Id.* at ¶ 52).

Ultimately, on April 7, 2015, Allied terminated its agreement with LCI claiming that LCI was insolvent and unable to perform at the required level. (*Id.* at ¶ 53). Plaintiffs contest these allegations and contend that their circumstances were the product of Defendants' actions. As a result of the foregoing conduct, LCI was unable to bid on the November City contracts. (*Id.* at ¶ 54).

Plaintiffs filed the instant suit raising five counts against the various Defendants: violation of 42 U.S.C. § 1981 (Count I); violation of 42 U.S.C. § 2000e (Count II); violation

of 42 U.S.C. § 1983 (Count III); violation of 42 U.S.C. § 1985(3) (Count IV); and tortious interference with contract (Count VI). Plaintiffs also allege that the City, Republic and Allied committed breach of contract (Count V). The Seng Defendants, the City Defendants, and the Republic Defendants now bring three separate Motions to Dismiss. The City and Republic Defendants both argue that Plaintiffs Linda and Jesse McGee lack standing to maintain any of the alleged causes of action. The Court will address this argument first. The Court will then discuss the viability of each of Plaintiffs' claims in light of the numerous interrelated and independent reasons for dismissal cited by Defendants.

## II.  <u>LEGAL STANDARD</u>

A motion to dismiss for failure to state a claim under Rule 12(b)(6) challenges the legal sufficiency of a complaint. *Hallinan v. Fraternal Order of Chi. Lodge No. 7,* 570 F.3d 811, 820 (7th Cir. 2009). A complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007). When considering a Rule 12(b)(6) motion to dismiss, a court must accept the plaintiff's allegations as true, and view them in the light most favorable to the plaintiff. *Meriwether v. Faulkner,* 821 F.2d 408, 410 (7th Cir. 1987). A court need not accept as true "legal conclusions, or threadbare recitals of the elements

of a cause of action, supported by mere conclusory statements." *Brooks v. Ross,* 578 F.3d 574, 581 (7th Cir. 2009) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)) (internal quotations and alterations omitted).

### III.  ANALYSIS

#### A. Standing as to Linda and Jesse McGee

The City and Republic Defendants argue that Plaintiffs Linda and Jesse McGee lack standing to maintain any of the alleged causes of action because they did not suffer any injury separate and apart from those allegedly suffered by LCI. Although the Complaint alleges that Linda McGee is the president and majority shareholder of LCI and that Jesse McGee is the Vice President of the company, well-established precedent holds that "shareholders do not have standing to sue for harms to the corporation, or even for the derivative of harm to themselves that might arise from a tort or other wrong to the corporation." *Hammes v. AAMCO Trans., Inc.,* 33 F.3d 774, 777 (7th Cir. 1994).

For Linda and Jesse McGee to have standing, they must be able to allege an injury that affects their own legal rights, not those of their company, LCI. *J.F. Shea Co. v. City of Chicago,* 992 F.2d 745, 749 (7th Cir. 1993); *see also, Southwest Suburban Bd of Realtors, Inc. v. Beverly Area Planning Assoc.,* 830 F.2d 1374 (7th Cir. 1987) (corporation's employees, officers, stockholders, and creditors had no injury distinct

from corporation and lacked standing to maintain antitrust suit); *Pitchford v. Pepi, Inc.,* 531 F.2d 92, 97 (3d Cir. 1975) (corporate president lacked standing to sue either in his capacity as a stockholder or as an officer because injuries were derivative of the company's injuries), *cert. denied,* 426 U.S. 935 (1976), 440 U.S. 981 (1979). They fail to do so. Neither Linda nor Jesse was party to either contract cited in the complaint, and the alleged discriminatory behavior upon which Plaintiffs base their claims was directed entirely at LCI. The Complaint contains no allegation of conduct that was personally directed at, or resulted in distinct personal injury to, Linda and Jesse McGee. Without such allegations, Plaintiffs Linda and Jesse McGee lack standing and the Court dismisses all claims brought by them. Plaintiffs are granted fourteen (14) days from the date of this Opinion to file an Amended Complaint.

### B.  Count I - Discrimination on the Basis of Race, Violation of 42 U.S.C. § 1981

Under section 1981, "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and territory to make and enforce contracts . . . and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens. . . ." The term "make and enforce contracts" includes the "making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges,

terms, and conditions of the contractual relationship." *Id.* at § 1981(b). To state a claim under 42 U.S.C. § 1981, Plaintiffs must allege that: (1) they are members of a racial or ethnic minority; (2) Defendants intended to discriminate against them on the basis of race or ethnicity; and (3) the discrimination concerned the making and enforcing of a contract. *Pourghoraishi v. Flying J, Inc.,* 449 F.3d 751, 756 (7th Cir. 2006). Thus, a successful section 1981 claim depends upon the existence of a contract. *Gonzalez v. Ingersoll Milling Mach. Co.,* 133 F.3d 1025, 1034 (7th Cir. 1998); *Stone v. Am. Fed'n of Gov't Employees,* 135 F.Supp.2d 873, 875 (N.D. Ill. 2001).

Plaintiffs allege that Defendants treated LCI differently to ensure that they did not qualify to bid for City contracts, and that this was done because of Plaintiffs' race. (Compl. ¶ 61). Plaintiffs do not base their section 1981 claim on any existing contract to which they were a party, instead, they claim that Defendants interfered with "the making" of a contract between LCI and the City. But a claim for interference with the right to make and enforce a contract "must allege the actual loss of a contract interest, not merely the possible loss of future contract opportunities." *Morris v. Office Max, Inc.,* 89 F.3d 411, 414 (7th Cir. 1996) (allegation that defendant interfered with "prospective" contractual rights is "speculative and insufficient to state a claim under § 1981"). Plaintiffs

have pleaded themselves out of court by admitting that they did not bid on the "November City contracts." (Compl. ¶ 54). Because Plaintiffs did not attempt to obtain the November contracts by placing bids, they never sought to enter into a contractual relationship with the City. As such, there was no contractual interest in which Defendants could interfere. Plaintiffs suffered only the possible loss of a future contractual opportunity, which is insufficient.

Moreover, it is well settled that a plaintiff cannot maintain a section 1981 claim when she is responsible for terminating the transaction. *Bagley v. Ameritech Corp.,* 220 F.3d 518, 521 (7th Cir. 2000); *Morris v. Office Max, Inc.,* 89 F.3d 411, 414 (7th Cir. 1996); *Hart v. Wal-Mart Stores, Inc.,* No. 09-CV-2125, 2010 WL 2663081, at *6 (C.D. Ill. July 1, 2010). Plaintiffs terminated the transaction with the City by failing to bid on the November contracts. In doing so, they extinguished any possible claim of racial discrimination under section 1981. Therefore, Plaintiffs' section 1981 claim fails as a matter of law and the Court dismisses Count I with prejudice as to all Defendants.

### C. Count II - Discrimination on the Basis of Race, Violation of 42 U.S.C. § 2000e ("Title VII")

Title VII prohibits discrimination in employment. 42 U.S.C. § 2000e-2. Plaintiffs' Title VII claim fails because they have not set forth any facts alleging that they applied for

employment with, or were ever employed by, any of the named
Defendants. *See, e.g., Alam v. Miller Brewing Co.,* 709 F.3d
662, 667 (7th Cir. 2013) (affirming dismissal of Title VII claim
where plaintiff failed to plead facts establishing that an
employment relationship existed between plaintiff and
defendant); *Mays v. BNSF Ry. Co.,* 974 F.Supp.2d 1166, 1177 (N.D.
Ill. 2013) (dismissing plaintiff's Title VII claim where
plaintiff admitted that he "was never employed by [defendant]").
The closest Plaintiffs come is in their relationship with
Allied. But that relationship is best described as an
independent contractor relationship, which is not covered by
Title VII. *Knight v. United Farm Bureau Mut. Ins. Co.,* 950 F.2d
377, 380 (7th Cir. 1991). Because Plaintiffs cannot cure this
defect by amending their pleadings, the Court dismisses Count II
with prejudice as to all Defendants.

### D.  Count III - Violation of the Fourteenth Amendment, 42 U.S.C. § 1983

To state a cause of action under 42 U.S.C. § 1983, a
plaintiff must allege that "some person has deprived him of a
federal right" and "that the person who has deprived him of the
right acted under color of state . . . law." *Gomez v. Toledo,*
446 U.S. 635, 640 (1980). Plaintiffs allege Defendants deprived
them of equal protection under the law in violation of the
Fourteenth Amendment. An equal protection cause of action
accrues whenever a state "den[ies] to any person within its

jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 1. To state an equal protection claim, a section 1983 plaintiff must allege that a state actor or a person acting under the color of state law purposefully discriminated against him because of his identification with a particular group. *Sherwin Manor Nursing Ctr., Inc. v. McAuliffe,* 37 F.3d 1216, 1220 (7th Cir. 1994).

Because the viability of a section 1983 equal protection claim depends upon the defendant's classification as a state actor or a person acting under state law, the Court will discuss the liability of the City Defendants before turning to the claims against the Republic Defendants and the Seng Defendants.

### 1. *The City Defendants*

A local governmental unit is subject to suit under 42 U.S.C. § 1983. But *respondeat superior* will not suffice to impose Section 1983 liability on the City. *Monell v. New York City Dep't of Soc. Servs.,* 436 U.S. 658, 690–91 (1978); *Moore v. Bd. of Educ. of City of Chgo,* 300 F.Supp.2d 641, 645 (N.D. Ill. 2004). Instead, for liability to follow, a City policy must be the source of the discrimination. *Monell,* 436 U.S. at 694; *Small v. Chao,* 398 F.3d 894, 898 (7th Cir. 2005). Thus, to state a claim against the City Defendants, Plaintiffs must allege the existence of either: (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a

widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority. *Moore,* 300 F.Supp.2d at 645; *see also, Kentucky v. Graham,* 473 U.S. 159, 165 (1985) (the entity's "policy or custom" must have played a part in the violation of federal law).

Plaintiffs have not alleged that their civil rights were violated by an express policy or that CPO Rhee was a final policymaker for purposes of imposing liability on the City. Instead, Plaintiffs essentially allege that the City acquiesced in, or ratified, the misbehavior of the other Defendants and CPO Rhee. But such allegations do not rise to the level of a "widespread practice" that, though not officially authorized, "is so permanent and well settled as to constitute a custom or usage with the force of law." *Moore,* 300 F.Supp.2d at 645.

Plaintiffs' allegation that the City of Chicago has never contracted with a minority-owned business to haul garbage does not cure this deficiency. This statistic could be due to many causes — most of which are completely innocent. Nowhere is it alleged with any particularity how this fact reflects an improper City policy; indeed the City's express policy on contracts not only prohibits discrimination against minorities,

but actually requires the City to have a goal of granting contracts to MBEs and WBEs. Therefore, Plaintiffs' Section 1983 claim as to the City is dismissed with leave to amend within fourteen (14) days of the date of this Opinion.

In their claim against CPO Rhee in her individual capacity, Plaintiffs seek to impose personal liability upon CPO Rhee as a government official for actions she took under color of state law. *Graham,* 473 U.S. at 165. To do so, they need only allege that CPO Rhee, acting under color of state law, caused the deprivation of a federal right because of their race. The allegations in the complaint concerning CPO Rhee are that she "participated in disparate treatment," (Compl. ¶ 34); that she "enabled" and "permitted Republic and Allied to obstruct LCI," (*id.* at ¶ 41); that LCI complained to CPO Rhee and she "ignored all the complaints," (*id.*); and that CPO Rhee approved payments to Allied without obtaining signed approvals from LCI, (*id.*). It is without dispute that, in taking the complained-of actions, CPO Rhee was acting under the color of state law. But Plaintiffs' allegations as to CPO Rhee's discriminatory motive are general and conclusory and do not raise a plausible claim of intentional discrimination on the basis of race. Therefore, the Court dismisses Plaintiffs' Section 1983 claim against CPO Rhee with leave to amend within fourteen (14) days.

### 2. The Republic Defendants and Seng Defendants

When a plaintiff brings a Section 1983 claim against a defendant who is not a government official or employee, the plaintiff must show that the private entity acted under the color of state law. *Rodriguez v. Plymouth Ambulance Serv.,* 577 F.3d 816, 822 (7th Cir. 2009). This requires that a court find such a "'close nexus between the State and the challenged action' that the challenged action 'may be fairly treated as that of the State itself.'" *Id.* at 823 (quoting *Jackson v. Metro. Edison Co.,* 419 U.S. 345, 351 (1974)). Plaintiffs have not even attempted to plead such a connection between the actions of the Republic and Seng Defendants and the City. Therefore, Plaintiffs' Section 1983 claim as to the Republic and Seng Defendants is dismissed with leave to amend within fourteen (14) days of the date of this Opinion.

### E. Count IV - Conspiracy between Private Actors and Government Officials, Violation of 42 U.S.C. § 1985(3)

A civil conspiracy under section 1985 is "a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damage." *Lenard v. Argento,* 699 F.2d 874, 882 (7th Cir. 1983); *Copeland v. Nw. Mem'l Hosp.,* 964 F.Supp. 1225, 1234 (N.D. Ill. 1997). Thus, to establish a *prima facie* case of

civil conspiracy under Section 1985, a plaintiff must show an express or implied agreement among the defendants to deprive the plaintiff of his constitutional rights, and a deprivation of those rights in the form of an overt act in furtherance of the agreement. *Scherer v. Balkema,* 840 F.2d 437, 441 (7th Cir. 1988).

It is not enough for a Section 1985 plaintiff to plead mere conclusory allegations of a conspiracy. Rather, the plaintiff must plead specific material facts that show the existence of a conspiracy. *See, Winterland Concessions Co. v. Trela,* 735 F.2d 257, 262 (7th Cir. 1984) ("[c]onclusory pleadings of a conspiracy must be dismissed"). To succeed, a plaintiff must allege a "single plan, the essential nature and scope of which is known to each person who is to be held responsible for its consequences." *Hoffman–LaRoche, Inc. v. Greenberg,* 447 F.2d 872, 875 (7th Cir. 1971). Moreover, the alleged conspirators must have intended to discriminate against the plaintiff and deprive him of equal protection or equal privileges and immunities *because of* his race. *Griffin v. Breckinridge,* 403 U.S. 88, 102-03 (1983); *see also, Jafree v. Barber,* 689 F.2d 640 at 643 ("To sufficiently state a cause of action [under Section 1985] the plaintiff must allege some facts that demonstrate that his race *was the reason for* the defendant's [action]." (emphasis added)). This type of allegation also must be supported by

material facts, not conclusory statements. *Jafree,* 689 F.2d at 644.

Plaintiffs have not alleged any facts indicating that the City or its agent, CPO Rhee, entered into an agreement with any of the other Defendants with the goal of depriving Plaintiffs of their constitutional rights because of their race. Plaintiffs' contention that a conspiracy existed is a legal conclusion that the Court need not accept as true, *Brooks,* 578 F.3d at 581, and Plaintiffs offer only conclusory allegations in support of this contention. Plaintiffs allege repeatedly that Defendants intended to "ensure that LCI failed during its probationary period," and would do "whatever was possible to cause [LCI] to fail." These allegations simply are insufficient to show that any meeting of the minds occurred between the City and the various Defendants to deprive Plaintiffs of their constitutional rights.

Furthermore, Plaintiffs have failed to allege facts to indicate that racial animus underlay Defendants' alleged conspiracy against LCI. Although Linda and Jesse McGee are African American and LCI is an African American-owned business, Plaintiffs make no further allegations to demonstrate that the alleged actions of the various Defendants were motivated by race. Plaintiffs simply tack on the phrases "because of Plaintiffs Linda and Jesse McGee's race" or "because of

[Plaintffs'] race" to each of their contentions in Count IV. Plaintiffs' allegations in the body of the Complaint that they were "treated differently than white owned contractors," and that Defendants "were not happy about having [a] black-owned contractor com[e] in and tak[e] their contract," are conclusory at best. Plaintiffs fail to allege *facts* showing any kind of racial animus on the part of the City or the other Defendants.

Finally, the Section 1985 claim against the City, like that under Section 1983, must be dismissed because Plaintiffs cannot hold the City liable for constitutional injury under Section 1985 unless an official custom, policy, or practice has caused the deprivation. *Monell,* 436 U.S. at 694. The allegations in the Complaint show that Plaintiffs are attempting to impose liability on the City not for its own policies, or for the acts of its policymakers, but rather for the alleged conspiratorial acts of its agent, CPO Rhee. Such allegations simply will not support holding the City liable under Section 1985(3).

Because Plaintiffs have not alleged the essential elements of a Section 1985(3) claim, Count IV is dismissed as to all Defendants. However, because it is conceivable that Plaintiffs can amend the Complaint to state a successful Section 1985(3) claim, the dismissal is without prejudice. Plaintiffs may amend within fourteen (14) days of the date of this Opinion.

## F. Count V - Breach of Contract

Plaintiffs make a claim for breach of contract as to the City, Republic and Allied. Under Illinois law, only a party to the contract, one in privity with a party to the contract, or a third-party beneficiary of the contract has standing to sue on a contract. *Haake v. Bd. of Educ. for Twp. High Sch. Glenbard Dist. 87,* 925 N.E.2d 297, 306 (Ill. App. Ct. 2010). Plaintiffs are not a party to Contract No. 21472, which is between Allied and the City. Nor have Plaintiffs alleged (nor could they in good faith) that they are third-party beneficiaries to Contract No. 21472. *See, Cronimet Holdings, Inc. v. Keywell Metals, LLC,* 73 F.Supp.3d 907, 917 (N.D. Ill. 2014) (stating that to treat a third party as a beneficiary to a contract, the contracting parties must intend to benefit directly the third party, and such intention "must be shown by an express provision in the contract identifying the third-party beneficiary by name or by description of a class to which the third party belongs"). Thus, Plaintiffs do not have standing to sue for breach of Contract No. 21472.

Although Plaintiffs were party to a separate contract with Allied, they do not base their claims on that contract, nor does that relationship confer privity on Plaintiffs in regard to Contract No. 21472. *See, Haake,* 925 N.E.2d at 306-07. Accordingly, Plaintiffs' breach of contract claim against the

City, Republic, and Allied based on Contract No. 21472 is
dismissed.  If Plaintiffs wish to replead this claim based on
the contract between Plaintiffs and Allied, they must do so
within fourteen (14) days of the date of this Opinion.

### G.  Count VI - Tortious Interference with Contract

To establish a claim of tortious interference with contract
a plaintiff must plead:  (1) the existence of a valid and
enforceable contract between the plaintiff and another; (2) the
defendant's awareness of the contractual relationship; (3) the
defendant's intentional and unjustified inducement of a breach
of the contract; (4) a subsequent breach by the other caused by
the defendant's wrongful conduct; and (5) damages.  *Grund v.
Donegan,* 700 N.E.2d 157, 160 (Ill. App. Ct. 1998).  Because
Plaintiffs have not alleged a viable breach of contract claim,
their claim for tortious interference with contract necessarily
fails.  *See, Cohen v. Am. Sec. Ins. Co.,* 735 F.3d 601, 613 (7th
Cir. 2013).  The Court dismisses Count VI with leave to amend
within fourteen (14) days of the date of this Opinion.

### H.  Seng Defendants' Motion for Sanctions

Finally, the Court considers briefly the Seng Defendants'
Motion for Sanctions [ECF No. 42].  In general, Rule 11 grants
this Court the power to impose sanctions upon counsel and a
represented party, including reasonable attorneys' fees.  FED. R.
CIV. PRO. 11.  Sanctions are appropriate when a pleading or motion

is neither well-grounded in fact nor warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law. In addition, sanctions are appropriate in the event a pleading or motion is interposed for any improper purpose, such as to harass, to cause unnecessary delay, or to needlessly increase the cost of litigation.

Essentially, the Seng Defendants request that the Court impose sanctions against Defense Counsel, Maurice Salem, for filing a pleading for an improper purpose. They argue that Mr. Salem is attempting to litigate a version of the same claims arising out of the same facts and against the same parties as a case in Illinois state court. The Seng Defendants claim the Illinois state court case resulted in, among other things, a judgment against LCI, and therefore *res judicata* prevents Plaintiffs from relitigating the matter in federal court.

Although the Seng Defendants raise this argument in their Motion to Dismiss, they do so summarily without citing any case law. Moreover, application of *res judicata* turns on whether the issues presented in this case are the same as the issues decided by the Illinois state court in issuing its final judgment, yet the Seng Defendants neglected to provide the Court with any documentation of the state court's decision. Although the Seng Defendants cite to two exhibits (presumably concerning the state court case) in their Motion for Sanctions, they actually failed

to attach the exhibits for the Court's review. The Court cannot take judicial notice of the state court decision based entirely on the Seng Defendants' characterization of the case. This is especially true because Plaintiffs contend that their claims against the Seng Defendants in the present case involve distinct legal issues from those decided by the state court.

In light of these circumstances, the Court declines to grant the Seng Defendants' Motion for Sanctions at this time. But if Plaintiffs choose to continue to pursue their claims against the Seng Defendants and the Seng Defendants can provide some documentary proof of the state court judgment and the issues decided thereby, the Court may be open to revisiting the request for sanctions.

## IV. **CONCLUSION**

For the reasons stated herein, Defendants' Motions to Dismiss [ECF Nos. 28, 32, 33] are granted. The Court dismisses with leave to amend all claims brought by Plaintiffs Linda and Jesse McGee for lack of standing. The Court dismisses all counts of the Complaint as follows: Count I and Count II of the Complaint are dismissed with prejudice; Count III and Count IV are dismissed without prejudice; Count V is dismissed with prejudice as to the City, but without prejudice as to Republic and Allied; and Count VI is dismissed without prejudice. If

Plaintiffs do not amend the Complaint within fourteen (14) days, these dismissals will convert into dismissals with prejudice.

In light of this conclusion, the Court also denies as moot Plaintiffs' Motion for Preliminary Injunction, Motion for Evidentiary Hearing, and Motion for Leave to Present New Evidence [ECF Nos. 17, 56, 60].

The Court also declines to grant the Seng Defendants' Motion for Sanctions at this time. But if Plaintiffs choose to continue to pursue their claims against the Seng Defendants and the Seng Defendants can provide some documentary proof of the state court judgment and the issues decided thereby, the Court may be open to revisiting the request for sanctions.

**IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

Dated:3/15/2016