IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **LINDA CONSTRUCTION, INC.,**<br><br>           **Plaintiff,**<br><br>      v.<br><br>**REPUBLIC SERVICES PROCUREMENT, INC.,**<br><br>           **Defendant.** | **Case No. 15 C 8714**<br><br>**Judge Harry D. Leinenweber** |

## MEMORANDUM OPINION AND ORDER

Because Plaintiff Linda Construction, Inc. ("LCI") has waived its right to arbitration and no ground exists to allow it to rescind that waiver, LCI's Motion to Lift the Court's previously imposed stay on arbitration [ECF No. 194] is denied.

### I. BACKGROUND

This case has had a tortured procedural history. Back in 2015, LCI brought a six-count Complaint against a number of Defendants. Among those sued were the City of Chicago, multiple corporate entities – including Republic Services, Inc. ("Republic") and Allied Waste Transportation, Inc. ("Allied") – and individual employees of the municipality and corporations. None of these Defendants is the one entity that still remains in the case: Republic Services Procurement, Inc. ("RSPI").

Indeed, LCI did not even mentioned RSPI in its original Complaint.

The causes of action brought in the original Complaint fell into two categories: those alleging violations of LCI's civil rights and those stating claims in contract. The contract that LCI relied on to plead its case at this point was an agreement between the City of the Chicago and Allied – what the Court in its previous opinion called the Main Contract. *See, Linda Constr. Inc. v. Allied Waste Indus.,* No. 15 C 8714, 2017 U.S. Dist. LEXIS 48367, at *5-7 (N.D. Ill. Mar. 31, 2017). A specific provision to that Contract is the fodder for the current Motion. Section 5.9 of the Main Contract contains the following arbitration clause:

> In the event a contractor has not complied with the contractual MBEs/WBEs percentage in its Schedule D, underutilization of MBEs/WBEs shall entitle the affected MBE/WBE to recover from the contractor damages suffered by such entity as a result of being underutilized; provided, however, that this provision shall not apply to the extent such utilization occurs pursuant to a waiver or substitution approved by the City. The Ordinance and contracts subject thereto provide that any disputes between the contractor and such affected MBEs/WBEs regarding damages shall be resolved by binding arbitration before an independent arbitrator other than the City, with reasonable expenses, including attorney's fees, being recoverable by a prevailing MBE/WBE in accordance with these regulations.

ECF No. 149, Ex. C (Main Contract).

Immediately after it filed the lawsuit in federal district court, LCI went on the offensive by bringing a Motion for a Preliminary Injunction. *See,* ECF Nos. 17-19. Defendants opposed the injunction and simultaneously moved to dismiss the Complaint for failure to state a claim. The parties fully briefed both sets of motions and appeared before the Court multiple times to air their disputes.

On March 15, 2016, the Court issued its ruling, handing down an all-around loss to LCI. Not only did the Court deny the company an injunction, it also dismissed the Complaint in its entirety. *See, Linda Constr. Inc. v. City of Chi.,* No. 15 C 8714, 2016 U.S. Dist. LEXIS 33376, at *25-26 (N.D. Ill. Mar. 15, 2016). In particular, the Court found that LCI was neither a signatory to, nor a third-party beneficiary of, the Main Contract and so did not have standing to sue under that Contract. *Id.* at *21-22. It thus dismissed the contract claims with prejudice. *Id.* at *25.

LCI then amended its Complaint. Surprisingly, the First Amended Complaint looked remarkably like the original, just-dismissed Complaint. *Compare,* ECF No. 1 (Original Compl.), *with* ECF No. 65 (First Am. Compl.). However, LCI attached to this Amended Complaint a contract between it and RSPI – what the parties sometimes call the Services Agreement and what the Court

referred to as the Transport Agreement in its last opinion. *See, Linda Constr.,* 2017 U.S. Dist. LEXIS 48367, at *3.

The key thing to keep in mind is that the Transport/Services Agreement and the Main Contract are two distinct legal documents. *See, id.* at *38-39 (listing the differences between the two contracts). The parties to the Main Contract are the City of Chicago and Allied, which was at some point bought by Republic. The parties to the Transport Agreement, on the other hand, are LCI and RSPI. RSPI is not the same entity as Republic or Allied, however much LCI seems to treat them as fungible.

In its First Amended Complaint, LCI continued to assert a breach of contract count against Republic and Allied (but not RSPI). However, LCI now relied on the Transport Agreement for this claim. *See,* ECF No. 65 at 5. The litigation on the contractual dispute thus proceeded apace despite language from the Transport Agreement mandating arbitration. *See,* ECF No. 65, Ex. E, at 6 ("Any disputes under the Services [or Transport] Agreement . . . that are not resolved by negotiation between the parties shall be resolved by binding arbitration."). (Technically, this arbitration provision comes from an amendment to the Transport Agreement. However, the parties treat the original contract and its amendments as one integrated document,

and the Court does the same, referring to them collectively as the Transport Agreement.)

Defendants again moved to dismiss the Complaint. Just eight days before the motions became fully briefed, LCI dismissed its contract claim without prejudice. *See,* ECF No. 92. On June 6, 2016, 257 days after bringing suit in federal court, LCI tendered a demand to Republic and Allied for arbitration of the contract claim, "citing the Services [or Transport] Agreement between LCI and RSPI as the source of [its] right to arbitration." ECF No. 104 at 3.

Republic and Allied responded by asking the Court to stay LCI's demand for arbitration. *See generally,* ECF Nos. 103 (Mot. to Enjoin or Stay Arbitration) and 104 (Mem. in Support of Mot.). Defendants argued that LCI had waived its right to arbitrate by litigating the breach of contract claim in a judicial forum. *See,* ECF No. 104 at 4-7. As Defendants stated, LCI and its owners' "demand to arbitrate their breach of contract claim is pure gamesmanship" as they had shown "no intent to arbitrate . . . until they feared that their claim would be dismissed, for the second time, for failure to state a claim." *Id.* at 5. Defendants also recited the time and money they have expended in responding to LCI's lawsuit. These included "hundreds of hours interviewing witnesses, analyzing

documents, engaging with Plaintiffs' counsel, researching law, responding to Plaintiffs' motions, briefing their own motions, and appearing in court." *Id.* at 6.

The Court granted Defendants' Motion and stayed arbitration of the Transport Agreement pending the second round of the Motions to Dismiss. *See,* ECF No. 110 (Minute Order Granting Mot. to Stay); ECF No. 150 (Tr. of Hr'g), at 3:4-5 ("The Court: I will stay arbitration pending the outcome of the motions."). Two months later, the Court granted in full the Motions to Dismiss. *See, Linda Constr. v. City of Chi.,* No. 15 C 8714, 2016 U.S. Dist. LEXIS 111311, at *14 (N.D. Ill. Aug. 22, 2016).

LCI then filed a Second Amended Complaint. *See,* ECF No. 136 (Second Am. Compl.). This Complaint differed from the first two in that, for the first time, LCI named RSPI as a Defendant in the case. LCI also dropped the contract claims from its Complaint. As LCI explained to the Court, it did this "in order to pursue arbitration as set forth in the Services [or Transport] Agreement." ECF No. 136 at 2. Indeed, after filing this Complaint, LCI moved to stay the case pending arbitration. *Id.* The parties then appeared before the Court to argue the Motion.

At the hearing, Defendants made the case that LCI has waived its right to arbitrate. LCI did this "by not filing once

but twice a breach of contract claim before this Court, one of which was fully briefed and dismissed as insufficient under the first complaint, the second of which we had moved to dismiss again and fully briefed [] on our end." ECF No. 152 at 6:12-7:1. Defendants convinced the Court that they had both the law and facts on their side. Accordingly, the Court denied LCI's Motion to Stay the Proceeding, stating in no uncertain terms that "filing a breach of contract is a clear indication of a waiver." *Id.* at 14:10-15. LCI asked for reconsideration, but the Court declined. *See,* ECF Nos. 147 & 151.

After some more delays, LCI again amended its Complaint, bringing what was the fourth complaint in the case. This Complaint was an amalgamation of all the previous pleadings. Not only did the breach of contract claims reappear, there were now two of them. The first was premised on the Main Contract and was asserted against the City of Chicago, Republic, and three different Allied entities. The second contract claim alleged a breach of the Transport Agreement and was brought against RSPI.

This Complaint fared little better than its disposed-of predecessors. Nor should LCI have expected it to. The Complaint did nothing to cure the deficiencies identified in the Court's prior opinions. *See, Linda Constr.,* 2017 U.S. Dist.

LEXIS 48367, at *15, 37 ("The Court has twice dismissed LCI's claims with leave to amend and clear instructions to cure the persistent deficiencies in its pleading. LCI yet again fails to do so."). The Complaint did not lack for boldness, however, as it brought back a claim that was previously dismissed with prejudice, *i.e.,* the contract claim resting on the Main Contract. *See, id.* at *29-30. Faced with such a zombie pleading, the Court again dismissed with prejudice. *Id.* at *37. The sole surviving cause of action from the Complaint was the contract claim LCI brought against RSPI. *See, id.* at *37-40. The Court nonetheless limited the scope of that claim, warning LCI that it must cabin its action to the Transport Agreement and not indiscriminately mix in allegations of breaches of the Main Contract by the Allied and Republic entities. *See, id.*

LCI does not seem able to let go of the Main Contract, however. It now brings this Motion, styled a "Motion to Lift Stay of Arbitration," to allow it to arbitrate an underutilization claim that LCI alleges arose under the Main Contract and is guaranteed arbitrability by Section 5.9 of that document. RSPI, the one remaining Defendant in the case, opposes the Motion. RSPI argues that LCI has waived any right to arbitrate, whether the company relies on the Main Contract or the Transport Agreement as the source for such a right. Much as

it did before, RSPI contends that LCI should be bound to its choice to forego arbitration, even if the decision turned out to be a poor one. For the reasons discussed below, the Court agrees.

## II. **LEGAL STANDARD**

While the Court's determination that a party has waived its contractual right to arbitrate is reviewed *de novo*, the factual findings upon which the Court premises its legal conclusion of waiver is reviewed only for clear error. *Ernst & Young LLP v. Baker O'Neal Holdings, Inc.,* 304 F.3d 753, 756 (7th Cir. 2002) ("The factual determinations that a district court predicates a finding of waiver upon are reviewed for clear error, while the legal question of whether the conduct amounts to waiver is reviewed *de novo.*"); *see also, Iowa Grain Co. v. Brown,* 171 F.3d 504, 508-09 (7th Cir. 1999) ("[T]here is both a factual and a legal dimension to the waiver inquiry. On the whole, the facts are what matter, because the district courts must make an inquiry into the totality of the circumstances that led to the alleged waiver."). A review for "clear error" means that the Court's decision will be upheld unless the court of appeals "reaches a firm and definite conviction" that the Court made a mistake. *Ernst & Young,* 304 F.3d at 756.

To determine whether LCI has waived its right to arbitrate, the Court looks to the totality of the circumstances to see if the company acted inconsistently with an intention to exercise that right. *See, e.g., id.; Iowa Grain,* 171 F.3d at 509. As is particularly relevant here, "an election to proceed before a nonarbitral tribunal for the resolution of a contractual dispute is a presumptive waiver of the right to arbitrate." *Cabinetree of Wis. v. Kraftmaid Cabinetry,* 50 F.3d 388, 390 (7th Cir. 1995). That presumption may be rebutted only by "extraordinary circumstances." *Id.* at 390-91. Factors that lean against a finding of such circumstances include the lack of diligence on the part of the party seeking arbitration (here, LCI) and prejudice to the party resisting arbitration (here, Defendants). *Id.* at 391.

## III. <u>ANALYSIS</u>

One of the more difficult questions in this Motion is to figure out what it is that LCI is asking of the Court. LCI asserts in the Motion that it "has arbitration rights under Section 5.9" of the Main Contract. ECF No. 194. ¶ 5. The company requests that the Court "lift the arbitration stay" and "allow the matters between Linda Construction and Defendant Republic that fall under Section 5.9 of the Main Contract [to] be arbitrated." *Id.* at 2. This seems straightforward – except

for the fact that there is no arbitration stay on the Main Contract. There was an arbitration stay on the Transport Agreement, but, as explained, the Transport Agreement and the Main Contract are not to be treated as interchangeable.

The Court resolves the conundrum as follows. Insofar as LCI is asking the Court to lift an existing stay to allow it to arbitrate the terms of the Main Contract, the Motion is denied because no such stay is in place. As a review of the procedural history of the case makes clear, the Court granted a Motion to Stay Arbitration of the Transport Agreement. *See,* ECF Nos. 103, 104, 110, and 150. No similar arbitration stay of the Main Contract was previously requested or granted.

Insofar as LCI is asking to be permitted to arbitrate "the matters between Linda Construction and Defendant Republic that fall under Section 5.9 of the Main Contract," ECF No. 194 at 2, the Court denies the Motion for the same reason that it previously denied LCI's request to stay the proceeding in favor of arbitration. LCI has waived any right it had to arbitrate, and no extraordinary circumstance exists so as to allow the company to rescind that waiver.

### A. LCI Has Waived Its Right to Arbitrate

"Like any other contractual right, the right to arbitrate a claim may be waived." *Welborn Clinic v. Medquist, Inc.,* 301

F.3d 634, 637 (7th Cir. 2002). Thus, even assuming that Section 5.9 of the Main Contract gives LCI the right to arbitrate an underutilization claim (something which RSPI disputes), LCI may no longer compel arbitration if it has "through an implicit course of conduct" waived that right. *Id.* LCI is the plaintiff in this case, and it filed this lawsuit in the district court. The company has thus made plain that it wishes to litigate its claims, not arbitrate them. As the Court previously stated, LCI's conduct evinces a "clear indication of a waiver" to arbitrate. ECF No. 152 at 14:10-15.

Seventh Circuit case law supports this conclusion. On more than one occasion, the Seventh Circuit has explained that "[l]litigating a claim is clearly inconsistent with any perceived right to arbitration." *Welborn Clinic,* 301 F.3d at 637; *accord, St. Mary's Med. Ctr., Inc. v. Disco Aluminum Prods. Co.,* 969 F.2d 585, 589 (7th Cir. 1992) ("Submitting a case to the district court for decision is not consistent with a desire to arbitrate."); *Cabinetree,* 50 F.3d at 391 (holding that "normally the decision to proceed in a judicial forum is a waiver of arbitration"); *Iowa Grain,* 171 F.3d at 509 ("[A]n important part of the district court's waiver inquiry is to determine as a matter of fact whether the party filing the lawsuit intended to elect a judicial forum rather than the

arbitral tribunal."); *Grumhaus v. Comerica Secs., Inc.,* 223 F.3d 648, 651 (7th Cir. 2000) (stating that "a plaintiff expresses his intent to submit to a judicial forum by filing a complaint"); *Kawasaki Heavy Indus. v. Bombardier Rec. Prods.,* 660 F.3d 988, 994-95 (7th Cir. 2011) ("Participation in litigation is considered in the waiver determination in order to ensure that the proper forum for a dispute is established as early as possible."). Having acted contrary to "any perceived right to arbitration," LCI effectively waived that right and cannot now exercise it. *Welborn Clinic,* 301 F.3d at 637.

Indeed, courts in this circuit have found waiver when a party was far less active than LCI in litigating its case. In *Grumhaus,* for instance, the plaintiffs sued, tried the case for several months, and then filed a demand for arbitration after their claims were dismissed. *See,* 223 F.3d at 649-50. When the district court ruled that the plaintiffs had not waived their right to arbitration under such circumstances, the Seventh Circuit reversed. *See, id.* at 653. The appellate court reasoned that because the plaintiffs "were aware of their right to arbitrate, as it was included in the documents they signed" but nonetheless chose to litigate their claims, they had made a "knowing selection of one forum over the other" and "must now live with that choice." *Id.* at 651, 653.

Likewise, the district judge in *Banc of Am. Secs. LLC v. Indep. Tube Corp.,* found that Independence Tube had "acted inconsistently with its right to arbitrate by choosing to file and pursue a complaint in federal court when it could have filed an arbitration claim." *Banc of Am. Secs. LLC,* No. 09 C 7381, 2010 U.S. Dist. LEXIS 43278, at *23-25 (N.D. Ill. May 4, 2010). The judge faulted Independence Tube for delaying in moving for arbitration, noting that "[i]t was only when it faced the prospect of dismissal of one of its claims – potentially with prejudice – that Independence Tube halted its efforts in the federal courts and pursued its claim in arbitration." *Id.* at *24-25.

In this case, as in *Grumhaus,* LCI knew of its right to arbitrate. The arbitration provision that LCI now relies on is found in the very contract that LCI attached to its original complaint. Just as in *Grumhaus* then, LCI made a "knowing selection of one forum over another." *Id.* at 651. But worse than the plaintiffs in *Grumhaus,* LCI did not give up after just one dismissal. Instead, it filed three subsequent Complaints, appeared in court to argue various and sundry motions related to those complaints, and necessitated yet more briefings from its counterparties and rulings from the Court on the same contractual claim that it now seeks to arbitrate. More still,

LCI delayed for even longer than Independence Tube. The company did not move for arbitration when it faced the *prospect* of dismissal with prejudice. Instead, LCI's earliest move for arbitration came *after* a dismissal with prejudice, and LCI's latest Motion comes after two dismissals with prejudice, a ruling denying a stay pending arbitration, and a denial to reconsider that ruling.

Given these facts, the Court must decline to find that LCI did not waive its right to arbitrate. *Cf., Kawasaki,* 660 F.3d at 995-96 (finding that no waiver occurred when the defendant "did not file a claim or motion" in front of the district court and "mentioned its desire to arbitrate at every turn"); *Halim v. Great Gatsby's Auction Gallery, Inc.,* 516 F.3d 557, 562 (7th Cir. 2008) (affirming that there was no waiver when the defendant "Gatsby did not participate in any pretrial activities prior to invoking the arbitration clause, nor did Gatsby unreasonably delay its arbitration demand"); *Sharif v. Wellness Int'l Network, Ltd.,* 376 F.3d 720, 727 (7th Cir. 2004) (finding that the defendant did not waive its right to arbitrate when "[a]ll that had occurred was a motion to dismiss under Rule 12(b)(6) and 28 U.S.C. § 1406(a)"); *Welborn,* 301 F.3d at 637 (agreeing with the lower court that the defendant acted "entirely consistent with a firm commitment to arbitrate" when

it "never sought to litigate this case in either state or federal court, never resisted any demands by Welborn to submit to arbitration, and moved to compel arbitration less than two months after the lawsuit was filed").

In light of unambiguous facts and clear Seventh Circuit precedent, LCI advances only one reason for the Court to allow it to go to arbitration: it has so far failed in this judicial tribunal. As LCI phrases the problem, "[w]ithout a lift of the Stay of Arbitration, LCI's underutilization issue will not be addressed by any forum." ECF No. 194 ¶ 8. But this is a consequence of the Court dismissing LCI's contract claim with prejudice. While LCI is understandably disappointed with that outcome, preventing a party from trying its luck elsewhere because it is unhappy with a decision rendered by its first-choice forum is the purpose of the waiver doctrine. *See, Kawasaki,* 660 F.3d at 994-95 ("This [waiver] policy prevents parties from waiting to see how they fare in a judicial forum before choosing arbitration, prevents the duplicative adjudication of disputes, and prevents the undue prejudice that results from a party spending time and money on litigation that will not ultimately resolve a case."); *Welborn Clinic,* 301 F.3d at 637 ("[W]e do not want parties to forum shop, taking a case to the courts and then, if things go poorly there, abandoning

their suit in favor of arbitration."); *St. Mary's,* 969 F.2d at 589 ("A party may not normally submit a claim for resolution in one forum and then, when it is disappointed with the result in that forum, seek another forum."); *Winforge, Inc. v. Coachmen Indus.,* No. 1:06-cv-00619-SEB-JMS, 2009 U.S. Dist. LEXIS 120050, at *4 (S.D. Ind. Dec. 22, 2009) (going so far as to state that "[u]nder no circumstances . . . should a court permit a party to rescind its waiver when the evidence shows that the party simply wanted to play 'heads I win, tails you lose,' in other words wanting to see how the case was going in federal district court before deciding whether it would be better off there or in arbitration") (internal alteration and quotation marks omitted) (citing *Cabinetree,* 50 F.3d at 391).

In sum, by bringing this lawsuit in the district court and litigating the case for a year and a half, LCI has waived its right to arbitrate.

### B. No Extraordinary Circumstance Exists to Allow LCI to Rescind the Waiver

The Court next considers if, despite having waived its right to arbitrate, LCI may rescind that waiver. As the Seventh Circuit explained, rescission is justified only in "abnormal" or "extraordinary" circumstances, including when there are "doubts about arbitrability," "unexpected developments during

discovery," and other factors making it "obvious that the party should be relieved from its waiver." *See, Cabinetree,* 50 F.3d at 390-91.

No such extraordinary circumstance exists here. According to LCI, there never was any doubt about the arbitrability of its underutilization claim. *See,* ECF No. 194 ¶ 5 (asserting that even "Defendant Republic continues to agree that LCI has arbitration rights under Section 5.9"). *Cf. Iowa Grain,* 171 F.3d at 510 (affirming that because a class action claim cannot normally be arbitrated, there was no inconsistency between the plaintiffs bringing a putative class action and moving to compel arbitration on an individual basis). Moreover, there has not been any unexpected development in this case; as far as the Court can tell, no new facts or authorities have emerged in the year and a half since LCI filed the lawsuit. And of course, nothing has made it "obvious" that LCI should not be held to its voluntary and knowing choice to litigate the case.

In addition, two factors weigh heavily against allowing LCI to rescind its arbitration waiver. First, LCI has not been diligent in pressing for arbitration. *See, Ernst & Young,* 304 F.3d at 756-57 (stating that "diligence or the lack thereof should weigh heavily in the [waiver] decision"). As mentioned previously, LCI waited 257 days after filing the Complaint to

tender its demand for arbitration. The company dragged its feet despite knowing that the contract under which it was bringing a claim contained a mandatory arbitration provision. Under these circumstances, LCI can hardly be said to have been diligent, or to have done "all it could reasonably have been expected to do to make the earliest feasible determination of whether to proceed judicially or by arbitration." *Cabinetree,* 50 F.3d at 391.

Second, LCI's dilatory conduct resulted in prejudice to the parties it now wants to haul into arbitration. *See, id.* (explaining that "prejudice to the other party, the party resisting arbitration, should weigh heavily in the decision to send the case to arbitration"). Although the parties have not moved beyond the motion to dismiss stage and so have not propounded discovery, LCI has nonetheless caused Defendants to incur substantial costs in the year and a half since this case has been ongoing. *See,* ECF No. 104 at 6 (representing to the Court the "hundreds of hours" as well as the "significant attorneys' fees and costs" that Republic and Allied have sunk into the case). As in *Ohio-Sealy Mattress Mfg. Co. v. Kaplan* then, it is difficult to understand how LCI "can contend that [Defendants] would not [be] prejudiced if [LCI] were permitted to insist on its right to arbitration after [Defendants] had

embarked on protracted litigation." *Ohio-Sealy Mattress Mfg. Co. v. Kaplan,* 712 F.2d 270, 273 (7th Cir. 1983).

On these facts, the Court finds that LCI has waived the right to arbitrate its contractual claim and that no ground exists to allow the company to rescind that waiver.

### III. CONCLUSION

For the reasons stated herein, LCI's Motion to Lift the Stay on Arbitration [ECF No. 194] is denied.

**IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

Dated: June 16, 2017